J-A09007-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: C.L.B., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: K.B. AND K.B. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1440 WDA 2023 |

Appeal from the Order Entered November 9, 2023
In the Court of Common Pleas of Bedford County Orphans' Court at
No(s):  AD-20 for 2023

BEFORE:  DUBOW, J., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY DUBOW, J.:                    **FILED: June 6, 2024**

Appellants, K.B. ("Paternal Uncle") and K.B. ("Paternal Aunt") (collectively, "Appellants"), appeal from the November 9, 2023 order entered in the Bedford County Court of Common Pleas that denied their petition to involuntarily terminate the parental rights of M.J. ("Mother") to 6-year-old C.L.B. ("Child") pursuant to 23 Pa.C.S. § 2511(a)(1).  Upon review, we affirm.

The relevant factual and procedural history is as follows.  Mother and B.B. ("Father") are parents to Child.  Appellants are Child's paternal great-aunt and uncle; Father is their nephew.  Mother has a history of illegal drug abuse, specifically methamphetamines, and Father has a history of incarceration.  On January 7, 2019, when Child was approximately eight months old, the custody court awarded legal and primary physical custody of Child to Appellants.  The court further ordered that Mother and Father could have partial physical custody as agreed upon by the parties.  Finally, the order

stated, "it is the understanding of the [c]ourt that both biological parents agreed to this [o]rder although neither parent was present in court." Order, 1/7/19.

Mother did not see Child until a few months later, when Father contacted her about visiting with Child. Appellants permitted Mother to stay in their home for a month until Mother began using illegal drugs again.

In August 2019, Paternal Aunt filed a petition for protection from abuse ("PFA") against Mother, alleging that numerous individuals informed Paternal Aunt that Mother was just released from jail and that Mother and her boyfriend had a loaded gun and a plan to come to Paternal Aunt's house to take Child forcibly. PFA Petition, 8/2/19. On August 6, 2019, the PFA court entered a final PFA order against Mother by consent that prohibited Mother from having contact with Paternal Aunt but permitted a third-party contact for custody discussion and exchanges. The PFA order remained in effect for a year, and Mother did not visit with Child for a year.

Once the PFA order expired, in August 2020, Mother began communicating with Paternal Aunt through Facebook messenger and began visiting with Child on a regular basis—eventually having some weekend visitation—until November 2021, when visits stopped until the Summer of 2023.

The parties have different explanations regarding why Mother's visits with Child stopped. According to Mother, after November of 2021, she continually reached out to Paternal Aunt via Facebook messenger as well as

stopped by their house a few times to set up visitation with Child over the next eighteen months but Paternal Aunt and Uncle stopped responding to Mother's outreach. According to Paternal Aunt, in November of 2021, Child came home from an overnight visit exhibiting bad behavior. Soon thereafter, Mother failed to show up for Christmas and Mother stopped contacting Child. Paternal Aunt also asserts that she had an active Facebook messenger account until she closed it at some point between March and June of 2023, but did not recall receiving any messages from Mother after November of 2021.

In June 2023, Mother filed a petition to modify custody and the court scheduled a hearing for September 22, 2023. While awaiting the hearing, the court awarded Mother visitation with Child on July 23, 2023, and August 13, 2023.

On August 15, 2023, Appellants filed a petition to involuntarily terminate Mother's parental rights to Child. The trial court appointed Matthew Dombroskly, Esq., to serve as both Child's legal counsel and guardian *ad litem* ("GAL"), after determining that there was no conflict between the dual roles. On October 16, 2023, and November 8, 2023, the court held a hearing on Appellants' petition. The court heard testimony from Paternal Aunt, Paternal Uncle, and Mother. Father was present at the hearing and stated on the record that if the court granted Appellants' petition to terminate Mother's parental rights that he would voluntarily relinquish his parental rights to Child.

The parties testified in accordance with the above-stated facts. In addition, Mother testified that she has not taken illegal drugs for the past four

years,[1] has stable housing, and cares for Child's younger sibling, D.C. She explained that she currently lives with D.C., her boyfriend who is D.C.'s biological father, and her boyfriend's parents in her boyfriend's parents' home. At the conclusion of the hearing, the trial court denied Appellants' petition. The Child's GAL was not in agreement with this disposition.

Appellants timely appealed. Both Appellants and the trial court complied with Pa.R.A.P. 1925.[2]

Appellants raise a sole issue for our review: "Did the lower court err and/or abuse its discretion by denying [Appellants'] petition for involuntary termination of parental rights of the natural mother and finding that [Appellants] failed to meet their burden of proof with regard to 23 Pa.C.S. § 2511(a)(1)?" Appellants' Br. at 5.

## A.

In cases involving the involuntary termination of parental rights, this Court's review is limited to determining whether the trial court's conclusion is supported by competent evidence. *In re Adoption of L.A.K.*, 265 A.3d 580, 591 (Pa. 2021). When we review a trial court's decision to grant or deny a petition to involuntarily terminate parental rights, we must accept the findings

---

[1] Mother is currently enrolled in a suboxone program through Altoona Crossroads where she receives monthly drug tests.

[2] In lieu of a substantive Rule 1925(a) opinion, the trial court relied on a portion of the notes of testimony from the November 8, 2023 termination of parental rights hearing.

of fact and credibility determinations of the trial court if the record supports them. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id*. (citation omitted). "Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand." *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009) (citation omitted). We may not reverse merely because the record could support a different result. *T.S.M.*, 71 A.3d at 267. We give great deference to the trial courts "that often have first-hand observations of the parties spanning multiple hearings." *Id.* Moreover, "[t]he trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citation omitted).

It is axiomatic that "[p]arents enjoy a fundamental right to make decisions regarding the care, custody and control of their children. It cannot be denied that significant and permanent consequences for both the parent and child can follow the termination of parental rights, as there is an undeniable importance in a child's relationship with a biological parent." *L.A.K.*, 265 A.3d at 591 (internal citations omitted). Accordingly, "[i]n recognition of the gravity attendant to the termination of parental rights, the moving party must establish the statutory grounds by clear and convincing

evidence; that is, evidence that is so clear, direct, weighty and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." ***Id.*** at 592 (citations and quotation marks omitted).

Section 2511 of the Adoption Act, 23 Pa.C.S. § 2511, governs termination of parental rights, and requires a bifurcated analysis. "Initially, the focus is on the conduct of the parent." ***In re Adoption of A.C.***, 162 A.3d 1123, 1128 (Pa. Super. 2017) (citation omitted). As discussed above, "[t]he party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a)." ***Id.*** (citation omitted). If the court determines that the parent's conduct warrants termination of his or her parental rights, the court then engages in "the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child." ***Id.*** (citation omitted).

Section 2511(a)(1) provides that the trial court may terminate parental rights if the Petitioner establishes that "[t]he parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties." 23 Pa.C.S. § 2511(a)(1). The focus of involuntary termination proceedings is on the conduct of the parent and whether that conduct justifies a termination of

parental rights. ***In re B.L.L.***, 787 A.2d 1007, 1013 (Pa. Super. 2001). Although the statute focuses on an analysis of the six months immediately preceding the filing of the petition, the court must consider the whole history of a given case and may consider a parent's inaction before the six-month statutory provision. ***In re K.Z.S.***, 946 A.2d 753, 758 (Pa. Super. 2008). "Although courts are to avoid the mechanical application of the Adoption Act, we may not ignore that the General Assembly has drawn focus to the six months immediately preceding the filing of the termination petition [and] the most critical period for evaluation is the six months immediately preceding the filing of the termination petition." ***L.A.K.***, 265 A.3d at 592.

This Court has repeatedly defined "parental duties" in general as the affirmative obligation to provide consistently for the physical and emotional needs of a child:

> Parental duties are not defined in the Adoption Act, but our courts long have interpreted parental duties in relation to the needs of a child, such as love, protection, guidance and support. Parental duties are carried out through affirmative actions that develop and maintain the parent-child relationship. The roster of such positive actions undoubtedly includes communication and association. The performance of parental duties requires that a parent exert himself to take and maintain a place of importance in the child's life. Fortitude is required, as a parent must act with reasonable firmness to overcome obstacles that stand in the way of preserving a parent-child relationship and may not wait for a more suitable time to perform parental responsibilities.

***Id.*** (internal citations and quotation marks omitted).

It is well-settled that "a parent's efforts are always considered in light of existing circumstances." ***Id.*** (citations and internal quotation marks

omitted).  "To that end, even where the evidence clearly establishes a parent has failed to perform affirmative parental duties for a period in excess of six months as required by Section 2511(a)(1), the court must examine the individual circumstances and any explanation offered by the parent to determine if that evidence, in light of the totality of circumstances, clearly warrants permitting the involuntary termination of parental rights."  *Id.* at 593 (citations and internal quotation marks omitted).

> Our Supreme Court has explained:
>
> Consideration of the totality of the circumstances includes evaluation of the following: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between the parent and child, if any, including any efforts made by the parent to reestablish contact with the child; and (3) the effect that termination of parental rights would have on the child pursuant to Section 2511(b). . . . It is within this framework that a court determines whether a parent has faced barriers that prevented the parent from maintaining the parent-child relationship.  What constitutes a "barrier" in the context of a Section 2511(a)(1) analysis is a finding within the discretion of the trial court, and what may constitute a barrier necessarily will vary with the circumstances of each case.  In some instances, obstructive behavior by the child's custodian presents a barrier to the parent's ability to perform parental duties, which mitigates the parent's failure to maintain the parent-child relationship.

*Id.* at 593.  Notably, "a parent's efforts to enforce his or her legal custody rights unquestionably establishes the affirmative performance of a positive parental duty, and that when such action is taken in the face of a custodial parent's efforts to thwart access to the child, the attempts to enforce custodial rights provide evidence that is highly relevant to the question of whether the requirements of Section 2511(a)(1) have been met."  *Id.* at 594.

**B.**

Instantly, Appellants aver that the trial court abused its discretion when it failed to terminate Mother's parental rights pursuant to Section 2511(a)(1). Appellants' Br. at 16. They argue that the trial court misapplied the law when the court concentrated on the fact that Appellants failed to prove that Mother "evidenced a settled purpose of relinquishing parental claim to a child" without addressing whether Mother "refused or failed to perform parental duties" as required by Section 2511(a)(1). *Id.* at 24-25, 30-31. Appellants assert that they have exclusively performed parental duties for Child and argue that Mother's own testimony reveals that, since November 2021, Mother has failed to provide financial assistance for Child, become involved in Child's education, assist with Child's healthcare or dental care, or send gifts or cards to Child. *Id.* at 33-34.

Our review of the record belies Appellants' claims that the trial court misapplied the law or abused its discretion. The trial court considered the totality of the circumstances and found that Mother did, in fact, fail to perform parental duties for Child but further concluded that barriers prevented Mother from doing so. N.T. TPR Hearing, 11/8/23, at 127-28, 133, 136-38. The trial court further found that Mother exercised reasonable firmness in overcoming the barriers and that her actions did not demonstrate a settled purpose of relinquishing her parental rights to Child. *Id.*

Specifically, the trial court credited Mother's testimony over Paternal Aunt's testimony. The trial court found credible Mother's testimony that she

attempted to contact Paternal Aunt and Uncle via Facebook messenger by sending "multiple, multiple messages" from December 2021 through March of 2023. *Id.* at 131-32. In turn, the trial court did not believe that Paternal Aunt had not received the messages; rather, the court found that Paternal Aunt received the messages and did not respond. *Id.* at 132-33. The trial court also believed Mother's testimony that she stopped by Paternal Aunt and Uncle's home in person several times attempting to set up contact with Child. *Id.* at 136-37. The court credited Mother's testimony that she did not have Paternal Aunt or Paternal Uncle's cell phone number until the July 10, 2023 custody conference. *Id.* at 134.

The trial court placed great weight on the fact that Mother filed a petition to modify custody, as well as on her actions after she filed the petition. *Id.* at 136. The trial court considered that, once Mother had a confirmed cell phone number for Appellants, she called them nine times and none of her calls were answered. *Id.* at 134. The court also considered that, after Mother filed the petition, she had two visits with Child that went well. *Id.* at 135.

The trial court found:

> The evidence has shown [that M]other filed a custody petition, made multiple attempts at telephone – once she had their phone number, at telephoning [Appellants], multiple text messages and even exercised two visits. It seems to [the court] that she was asking for a lot more, but what they could agree on was the two visits. . . . So, I think where [the court is] at in this [is] focusing most particularly on the events that occurred since Mother filed her custody modification petition on June 20, [2023] and everything that happened between that date and when the termination petition was filed on August 15[, 2023]. That's where

- 10 -

[the court] is placing most of the weight, but [this court] wants to be clear that [the court also finds] that at the end of 2021 clear through March of 2023 [Mother] was reaching out via Facebook Messenger[. The court] finds [Mother]'s testimony credible [that she] visited the home a couple times[,] two to three times, but that that did not result in contact.

*Id.* at 135-36.

Based on the totality of the evidence, the trial court found that Appellants failed to present clear and convincing evidence that Mother evidenced a settled purpose of relinquishing her parental rights pursuant to Section 2511(a)(1). The court further found that Appellants did, in fact, present clear and convincing evidence that Mother failed to perform parental duties pursuant to Section 2511(a)(1) but, upon examining Mother's individual circumstances and crediting Mother's testimony that Appellants created a barrier to Mother's contact with Child, concluded that Mother exhibited reasonable firmness in her efforts to overcome those barriers. The record supports the trial court's findings. We decline to reweigh the evidence or interfere with the trial court's credibility determinations. Accordingly, we find no abuse of discretion in the trial court's denial of Appellants' petitions.

As discussed above, we conclude that the trial court did not abuse its discretion when it determined that Appellants failed to demonstrate that Mother's conduct warranted a termination of his parental rights under Section 2511(a)(1). Accordingly, there is no need for this Court, or the trial court, to engage in the second part of the analysis pursuant to Section 2511(b) to determine if termination is in Child's best interest. *See A.C.*, 162 A.3d at 1128.

## C.

In conclusion, the record supports trial court's findings and, thus, the court did not abuse its discretion when it denied Appellants' petition to terminate Mother's parental rights to Child.

Order affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

 DATE: 06/06/2024